2013 BNH 020

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:   Bk. No. 11-11833-BAH
         Chapter 7

J. Theoginis Kehaias,
           Debtor

Joy Ruma,
        Plaintiff

v.   Adv. No. 12-1076-BAH

J. Theoginis Kehaias,
           Defendant

*Christopher Hilson, Esq.*
*Donahue, Tucker & Ciandella PLLC*
*Exeter, New Hampshire*
*Counsel for the Plaintiff*

*Robert L. O'Brien, Esq.*
*O'Brien Law*
*New Boston, New Hampshire*
*Counsel for Debtor Defendant*

## MEMORANDUM OPINION

## I. INTRODUCTION

The Court has before it a Motion for Summary Judgment (Doc. No. 11) (the "Motion") filed by Plaintiff Joy Ruma ("Ruma"), and the Objection to Plaintiff's Motion for Summary Judgment (Doc. No. 13) (the "Objection") filed by Debtor Defendant J. Theoginis Kehaias (the "Debtor"). Ruma seeks summary judgment that her claim against the Debtor, as embodied in a state court judgment she obtained—post-petition—in

the amount of $105,674.92, is non-dischargeable under section 523(a)(6) of the Bankruptcy Code as a debt for willful and malicious injury.  For the reasons set forth below, the Court finds that because the state court judgment is void for having been entered while the automatic stay was in effect, Ruma's request for summary judgment pursuant to the doctrine of collateral estoppel is denied.  Further, the Court finds that without the state court judgment, there is insufficient evidence in the record before it to determine that there are no genuine disputes of material facts.  Thus, as summary judgment is inappropriate on this record, the Motion is denied.

The Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 & 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. BACKGROUND

The travel of the Debtor's bankruptcy case, as well as the facts giving rise to this adversary proceeding, are somewhat convoluted.  The Court begins with a review of the procedural history of the Debtor's underlying bankruptcy, which is relevant here because of the timing of the contested post-petition conduct of the Debtor.  The Court then turns to the dispute between Ruma and the Debtor, the proceedings before the state court, and the state court's findings.  The Court concludes with a review of the adversary proceeding and Ruma's request for summary judgment.

A. <u>Bankruptcy Case</u>

On May 5, 2011, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. The first meeting of creditors pursuant to 11 U.S.C. § 341 was scheduled for June 9, 2011, and the deadline for filing complaints objecting to discharge/dischargeability was set for August 8, 2011. The Debtor's case was then converted to a chapter 13 case on the Debtor's motion on September 19, 2011. Two days later, the conversion was vacated pursuant to a motion to reconsider, and the case was converted back to one under chapter 7, with the discharge/dischargeability objection deadline remaining as August 8, 2011.

The case continued to cycle through conversions. On October 26, 2011, at a hearing on the Debtor's motion to convert the case back to chapter 13, the Court granted the Debtor's oral motion to convert the case to one under chapter 11.[1] Finally, on April 23, 2012, on motion of the U.S. Trustee, the case was converted for a third and final time to a chapter 7 case. The meeting of creditors in the now thrice-converted case was scheduled for May 24, 2012. While the notice setting that meeting did not explicitly set a deadline for filing complaints objecting to discharge/dischargeability, that deadline was nonetheless set by Bankruptcy Rule 4007(c), which requires such complaints to be filed sixty days after the date first set for the first meeting of creditors in the converted case. In this case, that deadline was July 23, 2012. The Debtor's discharge order entered on August 28, 2012, and the chapter 7 trustee filed a report of no distribution on January 24, 2013.

---

[1] After the second conversion, the meeting of creditors was scheduled for December 1, 2011, and the deadline to file a complaint opposing discharge/dischargeability was set as January 30, 2012. The deadline to file proofs of claim was set as February 23, 2012.

3

B. <u>Underlying Facts and the State Court Proceeding</u>

This adversary proceeding arises out of post-petition conduct of the Debtor during the summer of 2011. Ruma alleges that she was a tenant of the Debtor. Mem. of L. in Support of Mot. at 3 (hereinafter, "Ruma Mem."); <u>see also</u> Ruma Aff., Ex. 2. She also alleges that the Debtor acknowledged her as a tenant, even though her rent was paid by others, including her employer. Ruma Mem. at 3; <u>see also</u> Ex. 3. She further alleges that on or about July 20, 2011, the Debtor entered her living space, removed some of her belongings, left those belongings at her place of work, and changed the locks so that Ruma could not access the premises or retrieve the rest of her belongings. Ruma Mem. at 3; <u>see also</u> Ruma Aff. ¶ 5.

On July 28, 2011, Ruma filed a Petition under RSA 540-A:4 in New Hampshire state court ( 9th Circuit Court - District Division - Nashua) (the "Nashua District Court" or the "state court"), alleging that on July 20, 2011, her landlord (the Debtor) had "willfully locked me out of my apartment," "willfully seized my personal belongings," "is entering my apartment without my permission," and "removed most of my personal belongings." Ex. 6. The Petition sought temporary orders that would allow Ruma full access to the premises and the immediate return of all of her personal property, as well as final orders finding that the Debtor willfully locked her out of her apartment, willfully seized her personal belongings, entered her apartment without her permission, and willfully attempted to evict her without any legal process. <u>Id.</u>

On October 18, 2011, the Nashua District Court held a hearing on the merits of the case in which the Debtor and Ruma, both represented by counsel, participated. On March

4

12, 2012, that court issued a Final Order pursuant to New Hampshire R.S.A. 540A:4; Ex. 1 (the "Final Order"). In the Final Order, the court stated that:

> A hearing on the Merits was held on the plaintiff's [Ruma's] Petition under 540-A:4 on October 18, 2011. Both parties were represented by counsel. The plaintiff and the defendant testified. The Court finds the defendant's testimony lacked even a modicum of credibility. After a review of the testimony of all of the witnesses and a review of the submitted exhibits, the Court makes the following findings: The plaintiff, Joy Ruma was a tenant living at 22 Ash Street, Hollis, N.H. for the purpose of RSA 540-A:4. The defendant, Theoginis J. Kehaias, was the owner and landlord of 22 Ash Street, Hollis N.H. The defendant accepted payment of rent from Ms. Lisa Parker so that the plaintiff could reside at 22 Ash Street. The defendant knew that the plaintiff was a tenant of 22 Ash Street and openly acknowledged her as a tenant in his text messages. In a text message dated August 9, 2011, the defendant stated that he would be having "a new tenant moving in" thereby acknowledging not only that the plaintiff had been a tenant but that the part of 22 Ash Street occupied by the plaintiff was being used for residential purposes. <u>On July 20, 2011, the defendant knowingly, willfully and illegally removed some of the plaintiff's personal possessions from 22 Ash Street and forwarded them to her work place.</u> As of July 20, 2012, [sic] the rent at 22 Ash Street had been paid in full. On July 28, 2011, this Court issued Temporary Orders and Notice of Hearing, ordering the defendant to allow the plaintiff full and immediate access to the rented premises and ordering the defendant to return any and all of the plaintiff's personal possessions in the defendant's possession.

Final Order, Ex. 1 at 1-2 (emphasis added).

The state court held a subsequent hearing on the issue of damages on April 17, 2012, at which both parties were represented by counsel. The state court issued its Order on Damages on April 25, 2012. Ex. 9 (the "Order on Damages"). It found:

> [O]n July 20, 2011, the defendant knowingly, willfully and illegally removed some of the plaintiff's personal possessions from 22 Ash Street and forwarded them to her work place and he also changed the locks at 22 Ash Street thereby denying the plaintiff access to her residence. [O]n July 28, 2011, this Court issued Temporary Orders and notice of Hearing, ordering the defendant to allow the plaintiff full and immediate access to the rented premises and ordering the defendant to return any and all of the plaintiff's personal possessions in the defendant's possession. [A]s of October 18, 2011, the date of the Final hearing in this matter, the

5

> defendant still had not complied with the Court's Temporary Orders. [A]s of July 20, 2011, the defendant was in violation of RSA 540-A:2 and RSA-A:3 and was still in violation as of October 18, 2011. . . . [T]he plaintiff is entitled to damages beginning on July 20, 2010 [sic] and ending on October 18, 2010 [sic] a total of 91 days . . . and attorney's fees and costs . . . Judgment for the plaintiff in the amount of $91,000.00 plus costs and attorney's fees.

Order on Damages, Ex. 9 at 2-3.

Ruma timely filed her Proof of Claim in the Debtor's bankruptcy case on July 20, 2012. Proof of Claim 10-1 states a claim of $105,674.92, based on the Final Judgment and the Order on Damages.

   C. Adversary Proceeding

Contemporaneously with filing the Proof of Claim, on July 20, 2012, Ruma filed the complaint that commenced this adversary proceeding (the "Complaint") (Doc. No. 1), seeking a determination that the post-petition state court judgments represented a nondischargeable claim against the Debtor pursuant to 11 U.S.C. § 523(a)(6). In the Complaint, Ruma alleged that she was a residential tenant of the Debtor; that in violation of RSA 540-A, the Debtor "unilaterally and without judicial permission removed Ms. Ruma's belongings and barred her from the premises;" and that "these actions were knowing and willful violations of the applicable Landlord Tenant Statute." Compl. ¶ 7. Further, Ruma alleged that the Debtor "displayed open malice toward[s] Ms. Ruma in connection with his actions," and that the Debtor had used derogatory language to refer to Ruma during the alleged eviction. Ruma refers explicitly to the Final Order and the Order on Damages in the Complaint. Id. ¶¶ 10, 12-15.

6

In his Answer to the Complaint (the "Answer") (Doc. No. 4), the Debtor contests Ruma's assertion that she was a tenant, and alleges that Ruma "vacated the premises voluntarily." Ans. ¶ 7. The Debtor further argues that since all of the contested actions occurred prior to the conversion of the case to chapter 7, any claim held by Ruma is dischargeable in his bankruptcy. Id. ¶ 15-16. Additionally, the Debtor argues that "the judgment was entered while a bankruptcy stay was in place; accordingly the state court judgment is void." Id. ¶ 17.

Ruma now seeks summary judgment that her claim against the Debtor is nondischargeable pursuant to section 523(a)(6), on the grounds that the Nashua District Court "previously issued a judgment on the merits which found that the Debtor acted 'knowingly, willfully, and illegally' in his actions giving rise to Ms. Ruma's debt," and pursuant to the doctrine of collateral estoppel, no genuine dispute of material fact remains. Ruma Mem. at 1-2. She argues that since the central issue has already been litigated and determined by a final order on the merits in the state court, she is entitled to summary judgment in this adversary proceeding. Alternatively, Ruma seeks summary judgment because, she alleges, the facts underlying her claim are so egregious that no reasonable trier of fact could find that the Debtor did not act willfully, maliciously, and in direct contravention of RSA 540-A. Id. at 5.

In his Objection, the Debtor argues that collateral estoppel does not apply in this proceeding because the issues under RSA 540-A and section 523(a)(6) are not identical. He asserts that there still exist "genuine issues of material fact" with respect to whether the conduct at issue rises to the level of "willful and malicious" required by section 523,

and as to whether Ruma suffered an injury. He also argues that Ruma has not met her burden of proof that she is entitled to summary judgment.

The Court held a hearing on the Motion on May 20, 2013. At the hearing, when asked how the litigation could have occurred post-petition while the stay was in effect, Ruma responded that she was completely unaware that the debtor was in bankruptcy, and that the state court judge had determined that since the conduct was post-petition, he could render judgment on it. The Debtor, in response, acknowledged that he participated in the state court litigation and was represented therein by counsel, but argued that conversion allows debtors to add creditors, and that Ruma was "not a creditor" until the conversion to chapter 11 on October 26, 2011. At the conclusion of the hearing, the Court took the matter under submission.

## III. DISCUSSION

    A.    <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that a court shall "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.[2] The Supreme Court has defined an "issue of material fact" as a question which must be answered in order to determine the rights of the parties under substantive law and which

---

[2] The quoted language is taken from the 2010 revision of Rule 56(a), which replaces the previous Rule 56(c). In relevant part, it replaced "genuine issue of material fact" with "genuine dispute as to any material fact." To the extent any of the cited cases predate the change in the language of the rule, the change is not substantive.

can only properly be resolved "by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of demonstrating there are no genuine disputes as to any material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-moving party, who must present evidence establishing that a genuine dispute exists that would make it necessary to resolve the difference at trial, which can be done by the production of evidence on elements on which the non-moving party would bear the burden of proof at trial. See id.; Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (existence of a genuine dispute may be established by the production of suitable evidence "to establish a trialworthy issue"); Lassonde v. Stanton (In re Stanton), 2010 BNH 006, at *5-6 (Bankr. D.N.H. Feb. 8. 2010). The non-moving party cannot simply rely on contestations of motive or intent, where those issues are contested merely by conclusory allegations, improbable inferences, and unsupported allegations. Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2007); see also Anderson, 477 U.S. at 249-50 ("If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." (internal citations omitted)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (parties opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

Inferences and facts should be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus., 475 U.S. at 587. Summary judgment may be proper even though some material facts remain disputed if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of

law. "[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson, 477 U.S. at 252.

      B.      Collateral Estoppel Standard

The doctrine of collateral estoppel bars a party to a prior action from relitigating any issue or fact actually litigated and determined in the prior action. Hansa Consult of N. Am., LLC v. hansaconsult Ingenieurgesellschaft, 163 N.H. 46, 50 (2012). When collateral estoppel is argued in bankruptcy, the bankruptcy court looks to state law to determine the preclusive effect of a prior state court judgment. N.H. Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir. 1995). In New Hampshire, the elements of collateral estoppel are:

> (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment.

Hansa Consult, 163 N.H. at 50.

A threshold issue for determining whether collateral estoppel applies is whether there is a valid state court judgment. Here, the Court finds that the Final Judgment and the Order on Damages are void because they were entered in violation of the automatic stay, and Ruma has neither sought nor obtained relief from the automatic stay.

Section 362 provides that "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1).

10

The First Circuit has held that judgments entered in violation of the automatic stay are not merely "voidable," but are in fact "void."  Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975-76 (1st Cir. 1997).  In aligning with the majority of courts that find such judgments void, the First Circuit reasoned:

> This semantic difference has practical consequences because the characterization of an infringing action as 'void' or 'voidable' influences the burden of going forward.  Treating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the offending creditor.  In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor. We think that the former paradigm, rather than the latter, best harmonizes with the nature of the automatic stay and the important purposes that it serves.

Id. at 976.

Where a creditor seeks to obtain a judgment against a debtor, the burden of going forward therefore lies on the creditor.  11 U.S.C. § 362(d) provides: "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay for cause . . . ."  While ideally a creditor would obtain such relief *before* initiating a state court action against a debtor, relief from the automatic stay may be obtained retroactively.  Soares, 107 F.3d at 976-77.  In Soares, the First Circuit held that cases where retroactive relief is justified should be "few and far between," reasoning that if retroactive relief was easily available, creditors would anticipate post-facto relief and would therefore disregard the protections of the stay.  Id. at 977.

Ruma has requested no such relief here, and courts may not enter retroactive relief from the automatic stay sua sponte.  In Melendez Colon v. Castellanos Rivera (In re Melendez Colon), the Bankruptcy Appellate Panel for the First Circuit (the "B.A.P.")

11

held that it was a clear abuse of discretion, "amounting to a denial of due process," for a bankruptcy court to grant retroactive relief from the automatic stay to a creditor with no notice to the parties. 265 B.R. 639, 644 (B.A.P. 1st Cir. 2001). In that case, the debtor and his ex-spouse had been in the midst of contentious divorce court litigation at the time the debtor's bankruptcy petition was filed. The debtor told both his ex-spouse and the divorce court that he had filed a bankruptcy petition, and the court indicated that the proceedings were to be stayed. Shortly thereafter, however, the ex-spouse filed a contempt proceeding against the debtor, and the divorce court entered a judgment against him. The debtor sought to enforce the automatic stay in the bankruptcy court. The ex-spouse argued that her post-petition collection efforts were excepted from the automatic stay under section 362(b)(2)(B). The bankruptcy court found that her actions violated the stay, but determined that her actions should be granted retroactive relief from the stay because, inter alia, her debts were priority and nondischargeable, and would have to be paid in full under the debtor's chapter 13 plan pursuant to sections 1322(a)(2) and 507(a)(7). Id.

    The B.A.P. vacated and reversed the bankruptcy court's order granting retroactive relief, finding that there was no pending motion for relief from the automatic stay from the ex-spouse, and there had been no notice to the parties that the court was even considering the issue. Id. at 641-42, 644 & n.8 ("To be clear, we do not hold that, in the absence of a formal, filed motion, a creditor may never be granted stay relief, retroactive or otherwise. There may be instances, including those where the issue is raised by the court, when such relief could be granted. But to be lawful, those instances must be accompanied by fair notice and an opportunity to be heard.").

Here, Ruma commenced, litigated, and obtained a judgment against the Debtor in contravention of the automatic stay.  Because such judgments are void, as set forth in Soares, her lack of knowledge of the Debtor's bankruptcy cannot and does not act as a defense to the violation of the stay.  Further, the Debtor's complete participation, while represented by counsel, in the state court proceedings cannot waive or cure the violation of the automatic stay.  The Court is troubled by the Debtor's failure to notice the state court of his pending bankruptcy case, but the law in the First Circuit is clear: the Final Order and the Order on Damages are void because Ruma did not obtain relief from the automatic stay, either prospectively or retroactively.[3]

The Court shall continue in its analysis of the Motion seeking a determination that the claim is nondischargeable pursuant to section 523(a)(6) on Ruma's alternative grounds, i.e., that no reasonable finder of fact could determine that there is a genuine dispute as to any material fact.  However, in so doing, the Court will not give any preclusive effect to any of the facts or findings in the Final Order or the Order on Damages.

    C.    <u>Objections to Dischargeability under section 523(a)(6)</u>

Parties contesting the dischargeability of a debt have the burden of proving each element of their claim, see Grogan v. Garner, 498 U.S. 279, 283 (1991); Palmacci v. Umipierrez, 121 F.3d 781, 787 (1st Cir. 1997), and each element must be proven by a preponderance of the evidence, Grogan, 498 U.S. at 291.  Exceptions to the discharge are to be narrowly construed and construed in favor of the debtor.  Palmacci, 121 F.3d at 786.

---

[3] As discussed above, the Court cannot grant retroactive relief from the automatic stay, despite Ruma's lack of knowledge of the bankruptcy and the Debtor's full participation in the state court proceedings, without a motion from Ruma seeking such relief and an opportunity for the Debtor to oppose such relief.  That matter is simply not before the Court at this point in the proceedings.

A threshold issue to determining that a debt is nondischargeable is a showing that the claim is subject to a discharge in a chapter 7 proceeding. Where conduct occurs after the petition date, but before conversion to chapter 7, courts have recognized that the claim is still subject to a dischargeability determination because, pursuant to section 348(d), a claim arising out of post-petition, pre-conversion conduct is treated as if it arose pre-petition. See, e.g., Harvey v. Lewandowski (In re Lewandowski), 325 B.R. 700, 709 (Bankr. M.D. Pa. 2005) (finding that a post-petition judgment from the New Jersey Bureau of Securities entered prior to conversion to chapter 7 was subject to an exception from discharge under § 523(a)(19)).[4] Section 348 of the Bankruptcy Code provides that:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d).

Section 727(b) discharges the debtor from all debts arising prior to the order for relief, unless specifically excepted from discharge pursuant to section 523. 11 U.S.C. § 727(b). The effect of section 348(d) is to include post-petition pre-conversion debts within the category of dischargeable debts. Thus, Ruma's claim, which arose after the original chapter 7 petition was filed on May 5, 2011, but prior to the most recent conversion on April 23, 2012, is dischargeable in bankruptcy pursuant to section 727(b).

---

[4] The Lewandowski court found that, although "[a]t first blush, it appears that the debt is nothing more than a post-petition obligation and therefore not subject to a discharge under § 727," the effect of section 348(d) meant that "for all intents and purposes, [the] claim is statutorily classified as a pre-petition debt in [the] bankruptcy case." 325 B.R. at 709; see also White Front Feed & Seed v. State Nat'l Bank of Platteville (In re Ramaker), 117 B.R. 959, 963 (Bankr. N.D. Iowa 1990) (finding that although a chapter 11 administrative claim could have been subject to a section 523 dischargeability attack, the creditor had not raised any section 523 grounds to except the administrative claim from discharge).

Her claim is therefore subject to a nondischargeability determination under the provisions of section 523, so long as the complaint was timely filed.[5]

As discussed above, a nondischargeability complaint is timely filed if it is filed no later than sixty days after the first date set for the meeting of creditors under section 341(a).  Fed. R. Bankr. P. 4007(c).  Here, the Debtor's case was converted to a chapter 7 case on April 24, 2012.  The meeting of creditors was scheduled for May 24, 2012.  The deadline for creditors to file complaints objecting to dischargeability of certain debts, sixty days after the date of the first post-conversion § 341 meeting, was July 23, 2012.  Ruma filed the Complaint on July 20, 2012.  Thus, Ruma's claim is subject to a dischargeability determination pursuant to section 348(d), as it was timely filed.

Having found that Ruma's claim is subject to a dischargeability determination, the Court turns to the issue raised by the Motion's alternative basis for a summary judgment determination—whether the Debtor's conduct, as alleged in the Motion and in the summary judgment record, excepting the Final Order and the Order on Damages, was so egregious that it rose to the level of willful and malicious injury contemplated by section 523(a)(6).

Section 523(a)(6) provides: "A discharge under section 727 of this title does not discharge an individual debtor from any debt— . . . (6) for willful and malicious injury by a debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  To except a debt from discharge under section 523(a)(6), a creditor must show that: (1) the

---

[5] See Hollywood Casino v. Hill (In re Hill), 251 B.R. 816, 821-22 (Bankr. N.D. Miss. 2000) (finding that there is a heavy burden on creditors to file dischargeability complaints timely, even where there may be no notice of the bankruptcy proceeding); accord Bank of La. v. Pavlovich (In re Pavlovich), 952 F.2d 114, 119 (5th Cir. 1992) (finding that even where a creditor is bound by a confirmation order in a chapter 11 case, it may object to the dischargeability of a debt if the debt arose after confirmation and the debtor committed post-confirmation acts which support the non-dischargeability of the debt, so long as the complaint is timely filed pursuant to Rule 4007(c)).

15

debtor caused him or her injury; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious. Jones v. Svreck (In re Jones), 300 B.R. 133,139 (B.A.P. 1st Cir. 2003); Langlois v. Mirulla (In re Mirulla), 163 B.R. 912 (Bankr. D.N.H. 1994). For a debt to be nondischargeable as having arisen from willful and malicious conduct, it must have resulted from injury inflicted intentionally and deliberately with an intent to cause the harm complained of or in circumstances in which the harm was certain or almost certain to result. Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998) (noting that debts arising from recklessly or negligently inflicted injuries are not excepted from discharge under section 523(a)(6)); Svreck, 300 B.R. at 140.[6] A creditor must show that it suffered injury as a result of the debtor's willful and malicious conduct by a preponderance of the evidence. To find that there has been an injury to the creditor, courts have considered both evidence at trial and a determination on the merits by a prior court that there has been injury within the meaning of an applicable statute. See Field v. Hughes-Birch (In re Hughes-Birch), 499 B.R. 134, 150-51 (Bankr. D. Mass. 2013) (finding that the injury was "continuous an unabated invasion of and interference with its exclusive possession of its land" and that the element had been proven at trial by evidence of the offensive conduct); Landry v. Dunlop (In re Dunlop), 2006 BNH 050, at *8 (Bankr. D.N.H. Dec. 27, 2006) (finding the state court's ruling that the debtor's violation of RSA 540-A:3 resulted in actual and statutory damages was sufficient to establish the injury element of the creditor's claim).

---

[6] Where a motion for summary judgment is based upon the findings of a prior court, such as the state court here, the appropriate question for the bankruptcy court to consider is "whether the state court's findings and rulings are determinative on the issue of whether [the defendant] knew his deliberate acts were certain or substantially certain to result in injury to [the plaintiff]." Mirulla, 163 B.R. at 915. Because the Court is unable to give effect to the Final Order and the Order on Damages, that standard is not applicable here.

For a court to find that the injury was "willful" within the meaning of section 523(a)(6), a creditor must show by a preponderance of the evidence that the debtor acted intentionally, knowing that his or her deliberate actions were certain or substantially certain to cause injury to the creditor.  See Kawaauhau, 523 U.S. at 64; Stanton, 2010 BNH 006, at *10-1; accord Trenwick Am. Reinsurance Corp. v. Swasey (In re Swasey), 488 B.R. 22, 37-40 (Bankr. D. Mass. 2013) (noting that the First Circuit has not addressed whether the willful component must be satisfied using an objective or subjective standard).  The court, in making this heavily fact-based determination, may rely upon circumstantial evidence to determine whether the debtor had actual intent to cause injury to the creditor.  See Roumeliotis v. Popa (In re Popa), 140 F.3d 317, 318 (1st Cir. 1998) (holding that section 523(a)(6) seems to refer to an intentional tort, with the requisite intent to create the consequences of an action, rather than simply the action itself); Dunlop, 2006 BNH 050, at *9 (finding that a landlord's continued failure to comply with her duty to repair the septic system without an adequate excuse was sufficient to show willfulness within the meaning of section 523(a)(6)).

To find that an injury is "malicious" within the meaning of section 523(a)(6), a court must find that the debtor acted in conscious disregard of his duty without just cause or excuse, and that the act necessarily produced an injury to the creditor.  See Printy v. Dean Witter Reynolds, 110 F.3d 858, 859 (1st Cir. 1997); see also Jones, 300 B.R. at 140 (finding a sexual harassment finding was equivalent to a finding of malicious and willful injury); Hughes-Birch, 499 B.R. at 153-54 (finding that the debtor's continued litigation of a issue in contravention of court orders constituted "the type of aggravated and unjustified misconduct which warrants a finding of malice under § 523(a)(6)").

17

It is not necessary to find the debtor acted with special malice toward the creditor, but it is insufficient to find merely that the debtor knew the creditor's legal rights were being violated. See Printy, 110 F.3d at 859 (further explaining that an injury may be malicious even in the absence of personal hatred, spite, or ill-will, because the scienter requirement of section 523(a)(6) is an intent to cause the harm, quoting 4 Collier on Bankruptcy ¶ 523.12 (15th ed. 1996)); Dunlop, 2006 BNH 050, at *13.  Like with willfulness, courts may consider circumstantial evidence to determine whether the debtor acted with malice.  Mirulla, 163 B.R. at 916 (using the state court's decision finding liability under RSA 540-A to determine malice, as it was "replete with factual findings from which it can be inferred that [the debtor] knew his actions were certain or substantially certain to cause injury").

Given the Court's inability to give any effect to the Final Order and the Order on Damages—each of which is void as violative of the automatic stay—the record before the Court is sparse.  The Court first looks at whether Ruma can establish an injury due to the Debtor's conduct.  Without the Order on Damages, there is little evidence in the record to support the assertion that there was any injury, and there is no support for the calculation of damages in the amount of $105,674.92 in the summary judgment record, except in the void Order on Damages.

The Court next turns to whether Ruma has established, outside of the state court proceedings, that the Debtor's alleged conduct rises to the level of willful and malicious. In the absence of the Final Order, there are no findings of willful or illegal conduct. Without those findings, the Court cannot determine on the summary judgment record whether the Debtor's conduct rises to the level of willful and malicious.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court finds that there is an insufficient record to support summary judgment in favor of Ruma.  Ruma has failed to meet her burden to demonstrate that there are no genuine disputes of material fact.  Thus, the Motion is denied.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   December 31, 2013                    /s/ Bruce A. Harwood
                                             Bruce A. Harwood
                                             Chief Bankruptcy Judge